UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

BRIAN J. DAVIS,

        Plaintiff,

    v.

DAVID P. STEINER,
Postmaster General,
United States Postal Service,

        Defendant.

Case No. 2:26-cv-00909

## COMPLAINT

NOW COMES Plaintiff Brian J. Davis, by his attorneys, THE SULTON LAW FIRM LLC, by Attorney William F. Sulton, and brings this Complaint against Defendant David P. Steiner, Postmaster General of the United States Postal Service, and alleges as follows:

### I. Introduction

1. This is an action for declaratory, injunctive, and monetary relief brought by a dedicated public servant to remedy unlawful employment discrimination on the bases of race (Black), color (Black), age (40+), and physical disability (status post-knee replacement surgery and associated sciatica). Plaintiff Brian J. Davis was subjected to disparate treatment, a failure to accommodate, and discriminatory barriers when management blocked his return

to active duty after he was medically cleared to work following an extended medical leave of absence.

## II. Jurisdiction and Venue

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 42 U.S.C. § 2000e-5(f) (Title VII), 29 U.S.C. § 794a (Rehabilitation Act), and 29 U.S.C. § 626 (ADEA).

3.    Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed within this judicial district at the Milwaukee Processing and Distribution Center ("Milwaukee P&DC"), located at 345 W. Saint Paul Avenue in Milwaukee, Wisconsin.

## III. The Parties

4.    Plaintiff Brian J. Davis ("Davis") is a Black African-American male who was at all times relevant to this action over the age of forty years and an employee of the federal government.  Davis resides in the City and County of Milwaukee, Wisconsin.

5.    Defendant David P. Steiner is the Postmaster General of the United States and the head of the USPS agency.  In this capacity, he manages the operations of the USPS and is responsible for the policies, practices, and personnel decisions of the agency.  He is sued in his official capacity only.

## IV. Administrative Exhaustion

6. Davis has timely and completely exhausted his administrative remedies. Davis initiated contact with an Equal Employment Opportunity ("EEO") Alternative Dispute Resolution Specialist on May 31, 2025, within 45 days of the initial discriminatory actions. Mediation was conducted via the REDRESS program on July 15, 2025, but the matter was not resolved.

7. On July 23, 2025, the agency issued Davis a Notice of Right to File an Individual Complaint. Davis timely filed his Formal EEO Complaint of Discrimination (Agency Case Number: 1D-652-09876-25) on August 7, 2025, within the mandatory 15-day filing window. The agency accepted the claims for investigation on August 25, 2025.

8. The National EEO Investigative Services Office ("NEEOISO") conducted an investigation and completed the Investigative File on October 21, 2025. Davis received the Transmittal of the Investigative File on October 23, 2025, providing 30 days to elect a hearing or a final agency decision. Davis has timely filed this civil action within the applicable regulatory and statutory windows following the administrative processing of his claims.

## V. The Facts

9. Davis was hired with the USPS on March 26, 2015, and served for nearly a decade as a Full-Time Tractor Trailer Operator (Level PS-08, Step J) at the Milwaukee P&DC, earning an annual base salary of $72,730. His duties

included sorting, loading, transporting, and delivering bulk quantities of mail using heavy-duty commercial motor vehicles.

10.     On September 26, 2024, Davis underwent major, right total knee arthroplasty (knee replacement surgery) at the Orthopedic Institute of Wisconsin to treat a severe physiological and sciatica, which substantially limited his major life activities, including walking, standing, lifting, bending, and sleeping.

11.     On October 14, 2024, Davis was released by his treating physician, Dr. Thomas J. Parisi, to return to work with temporary physical restrictions, including alternating sitting and standing, avoiding lifting over 25 dollars/pounds, and limiting active duties to a light/limited duty capacity.  Davis submitted this documentation to his immediate supervisor, Antone Beckley, and the Occupational Health Unit via fax on November 4, 2024.  USPS management refused to return Plaintiff to duty, citing an absence of available light duty work in the Tractor Trailer Operator craft.

12.     In March 2025, while Davis remained in a temporary Leave Without Pay ("LWOP") status due to management's refusal to accommodate him, the Wisconsin District Reasonable Accommodation Committee ("DRAC") co-chairs, Fred Schroeder and Ron Hirn, initiated correspondence requesting medical documentation.  Due to severe mail delivery and communication delays resulting from Davis's forced displacement, Davis did not receive or return the documentation within the short windows arbitrarily provided.  Consequently, on

April 3, 2025, the DRAC closed his accommodation case without conducting an interactive meeting.

13. On April 5, 2025, because Davis had been kept in an unpaid forced-LWOP status by management for a consecutive period exceeding 365 days, the USPS processed a personnel action (PS Form 50) terminating his Federal Employees' Group Life Insurance ("FEGLI") coverage, compounding Davis's severe financial and emotional distress.

14. On April 17, 2025, Davis was evaluated by his clinical team at the Orthopedic Institute of Wisconsin. Davis was issued a standardized medical release fully clearing him to return to work on a full-duty basis with zero physical restrictions. Davis immediately submitted this unconditional full-duty medical release to his immediate supervisor and to the Human Resources department, requesting an immediate reinstatement to his Tractor Trailer Operator position.

15. Despite possessing an unconditional medical release from his treating specialist, Acting Manager of Logistics Operations Brad Kozey, with the authorization of upper management and HR, explicitly blocked Davis from returning to work on April 17, 2025. Management failed to provide any objective, job-related, or legitimate business justification for overriding the treating physician's clearance and refusing to reinstate Plaintiff to his active position.

16. Rather than returning Davis to his long-held Tractor Trailer Operator position, management continued to treat Davis as if he were incapacitated, using his record of disability as a pretextual barrier to exclusion.

To escape complete financial ruin and total loss of employment, Davis was forced to bid on a lower-level, sedentary position inside the facility. On May 17, 2025, the agency processed a "Change to Lower Level or Band" personnel action, forcing Davis into a Clerk Vehicle Dispatching position (Level PS-06, Step L) with a reduced base salary of $71,928, stripping him of his premium driving line-of-duty pay and benefits.

17. Davis was finally permitted to re-enter the postal facility to begin working the lower-level dispatch job on June 3, 2025. During the period of unconstitutional exclusion from April 17, 2025, through June 3, 2025, Davis was entirely deprived of all income, regular wages, seniority accrual, and employment benefits.

18. During the same period, similarly situated white, Caucasian, and significantly younger postal employees at the Milwaukee facility who returned from extended medical leaves were immediately reinstated to their active duties or provided light-duty accommodations without experiencing similar administrative delays, DRAC exclusions, or wage-and-grade demotions.

19. As a direct result of Defendant's discriminatory actions, Davis suffered extreme financial devastation, including the complete loss of his primary livelihood, deep credit damage, repossession of his personal vehicle, denial of state unemployment benefits due to conflicting USPS personnel reporting, and ultimate eviction from his home. The resulting financial and vocational strain triggered severe personal health crises, including dangerously high blood pressure, frequent

headaches, debilitating anxiety, deep clinical depression, and acute emotional distress requiring specialized psychological and psychiatric counseling.

## VI.  The Claims

### A.  Count One: Discrimination on the Basis of Race and Color (Title VII of the Civil Rights Act of 1964)

20.    Davis realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 19 as if fully set forth herein.

21.    Davis is a member of a protected class based on his race (Black) and color (Black African-American).

22.    Davis was fully qualified to perform the essential functions of his long-held Tractor Trailer Operator position, as verified by his technical licensing, structural ten-year tenure, and explicit medical clearance from his treating physician on April 17, 2025.

23.    Defendant subjected Davis to adverse employment actions by refusing to allow him to return to work on April 17, 2025, prolonging his forced unpaid leave, and subsequently forcing his demotion to a lower-paying Clerk Vehicle Dispatching position.

24. Similarly situated employees outside of Davis's protected class (specifically white, Caucasian individuals) were treated more favorably under identical return-to-work circumstances, establishing a clear inference of disparate treatment based on race and color, controlled by younger, white supervisors and management officials (including Brad Kozey and Antone Beckley).

25. As a direct and proximate result of Defendant's discriminatory conduct, Davis has suffered and continues to suffer substantial economic losses, including back pay, front pay, lost differentials, seniority degradation, and severe compensatory damages for emotional, mental, and physical injuries.

**B. Count Two: Discrimination on the Basis of Physical Disability (Rehabilitation Act of 1973, 29 U.S.C. § 794)**

26. Davis realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 19 as if fully set forth herein.

27. Davis is a qualified individual with a disability within the meaning of the Rehabilitation Act, as he had a record of a physical impairment (status post-knee replacement surgery with acute radiculopathy) that temporarily substantially limited major life activities, and was subsequently regarded by Defendant as having a permanent disabling impairment that disqualified him from driving duties.

28. Defendant was fully aware of Davis's physical impairment, his record of disability, and his explicit medical clearance to return to full, unrestricted active duty on April 17, 2025.

29. Defendant discriminated against Davis on the basis of his disability by completely disregarding his physical clearance, barring him from entering the workplace, refusing to interactively engage with him, and forcing a discriminatory transfer to a lower-grade position due to an unfounded perception of physical limitation and localized animus.

30. Defendant failed to participate in good faith in an interactive process and failed to provide equal employment placement, treating Davis's physical recovery with institutional disregard and systemic barriers.

31. As a direct and proximate result of Defendant's discriminatory conduct, Davis has suffered and continues to suffer severe economic, physical, and emotional injury.

### C. Count Three: Discrimination on the Basis of Age (Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*)

32. Davis realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 19 as if fully set forth herein.

33. Davis was at all relevant times over the age of forty (60 years old during the operative period) and is protected by the provisions of the ADEA.

34. Davis was meeting all legitimate performance expectations of his position and was medically certified to safely operate heavy commercial machinery as a Driver.

35. Defendant subjected Davis to an adverse employment action by blocking his return to active duty and forcing his demotion to a lower-level sedentary clerk role, while routinely returning substantially younger operators (under the age of 40, including individuals managed under younger supervisors such as Brad Kozey, age 39) to active driving lines.

36. Davis's age was the determining factor, or the "but-for" cause, of Defendant's refusal to reinstate him and subsequent administrative actions designed to strip him of his high-grade seniority and pay structure.

37. As a direct and proximate result of Defendant's discriminatory conduct, Davis has suffered and continues to suffer significant financial damages and profound emotional and mental suffering.

## VII. Relief Requested

WHEREFORE, Davis respectfully requests that this Court enter judgment in his favor and against Defendant, granting the following relief:

A. Enter a declaratory judgment that the acts, policies, and practices of Defendant complained of herein violate Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, and the Age Discrimination in Employment Act;

B. Grant a permanent injunction restraining Defendant, his agents, and successors from continuing to engage in employment practices that discriminate on the bases of race, color, age, and disability, and strictly prohibiting any acts of reprisal or retaliation against Davis;

C. Order Defendant to immediately reinstate Davis to his former position as a Tractor Trailer Operator (Level PS-08), or an equivalent driving position, with full restoration of his seniority status, leave balances, insurance profiles, and retirement service credits retroactive to April 17, 2025;

D. Award Davis full back pay, front pay, regular hourly wages, shift differentials, and overtime hours he would have reasonably earned from April 17,

2025, to the date of full reinstatement, plus pre-judgment interest, to remedy his lost income and forced demotion;

E.      Award Davis compensatory damages for financial hardship, housing eviction losses, property repossession expenses, extreme emotional distress, mental anguish, high blood pressure crises, and psychological pain and suffering in an amount to be determined at trial;

F.      Award Davis reasonable legal fees, expert witness costs, litigation expenses, and representative disbursements incurred in pursuing this action; and

G.      Grant such other, further, or alternative relief as this Court deems just, equitable, and appropriate under the circumstances.

## VIII.  Demand for Jury Trial

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Davis hereby demands a trial by jury on all issues and counts so triable in this action.

Date: May 21, 2026.                    Respectfully submitted,

*/s/ William F. Sulton*
WILLIAM F. SULTON

THE SULTON LAW FIRM LLC
2745 N. Dr. Martin Luther King Jr. Drive
Suite 202
Milwaukee, WI 53212
414-477-0088 (direct)
414-973-8844 (fax)
william@sultonlaw.com

*Counsel for Plaintiff*